IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02377-NRN

MARY CORCORAN,

Plaintiff,

v.

HCA-HEALTHONE LLC, d/b/a ROSE MEDICAL CENTER,

Defendant.

---

**ORDER ON DISCOVERY DISPUTE RELATING TO DEFENDANT'S CLAIM OF ATTORNEY-CLIENT PRIVILEGE WITH RESPECT TO FORMER EMPLOYEES**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on a discovery dispute regarding the scope of deposition questioning of former employees of Defendant Rose Medical Center ("Rose"). Rose asserts that its lawyers' conversations with former employees are covered by the attorney-client privilege. During a deposition of a former employee, Rose's counsel instructed the former employee deponent not to answer questions about communications with counsel during deposition preparation, even though Rose's counsel did not represent the former employee. Plaintiff Mary Corcoran's counsel argues that they should be entitled to inquire into such pre-deposition conversations between an unrepresented former employee and Rose's counsel. The Parties were asked to submit written briefs on the subject. Plaintiff's brief is found at Dkt. #32. Rose's brief is found at Dkt. #33.

The Court heard argument on the issues raised by the briefs on May 10, 2022. In addition to the question of attorney-client privilege, the Parties also raised whether Plaintiff's counsel is entitled to contact and communicate with current Rose employees (not management level and who are not regularly consulting with Rose's counsel on the matter) who may be witnesses, without Rose's counsel being present.

**Attorney-Client Privilege and Former Employees**

A timely article appeared in a recent *Colorado Lawyer* magazine addressing the precise issue of attorney client privilege and former employees. *See* Ben Lebsack and John Lebsack, "Privileged Communication with Current and Former Corporate Employees," *Colorado Lawyer*, May 2022 at 42–48. The article does a good job of outlining the uncertainty about this area of the law and much of its content is recited below.

The United States Supreme Court in *Upjohn v. United States*, 449 U.S. 383 (1981), found that a corporation's attorney's communications with the corporation's employees were privileged because (1) the communications were made to the corporate counsel acting as such; (2) they were made at the direction of corporate superiors, for the purpose of securing legal advice from counsel; (3) they concerned matters within the scope of the employees' corporate duties; and (4) the employees were sufficiently aware that they were being questioned so that the corporation could obtain legal advice. 449 U.S. at 394.

*Upjohn* did not specifically address whether the privilege extended to communications with *former* employees. However, Chief Justice Burger wrote a concurring opinion trying to articulate a broader general rule that a "communication is

privileged at least when, as here, an employee *or former employee* speaks at the direction of the management with an attorney regarding conduct or proposed conduct within the scope of employment." *Id.* at 403 (Burger, C.J., concurring) (emphasis added). Oddly, Chief Justice Burger gave no analysis explaining why the attorney-client privilege should extend from employees to include *former* employees. Neither did Chief Justice Burger explain whether the privilege only applied to communications relating to activities within the scope of the former employee's employment while the employee was employed, or whether it also covered communications with the former employee after employment had ended.

Some courts have disputed the *Upjohn* concurrence's conclusion, emphasizing fundamental differences between a current employee and a former employee:

> Former employees are not the client. They share no identity of interest in the outcome of the litigation. Their willingness to provide information is unrelated to the directions of their former corporate superiors, and they have no duty to their former employer to provide such information. It is virtually impossible to distinguish the position of a former employee from any other third party who might have pertinent information about one or more corporate parties to a lawsuit.

*Clark Equip. Co. v. Lift Parts Mfg. Co.*, No. 82 C 4585, 1985 WL 2917 at *5 (N.D. Ill. Oct. 1, 1985). *Clark Equipment* is significant because it arose in a similar context to this case. What was at issue was pre-deposition but post-employment conversations between the deponent and the corporation's counsel concerning the witnesses' prior employment. The court ended up holding that the reasoning of *Upjohn* did not support the extension of the attorney-client privilege to cover post-employment communications with former employees of a corporate party. *Id.* The court did emphasize the principle that conversations with counsel that occurred *during* employment should remain

3

privileged after the employee leaves. *Id.* at *6 (citing *In Re Coordinated Pretrial Proceedings, Etc.*, 658 F.2d 1355, 1361 n.7 (9th Cir. 1981), *cert. denied sub nom. California v. Standard Oil Co. of California*, 455 U.S. 990 (1982)).

Another example is a case from the Supreme Court of Washington which, while interpreting Washington state law, declined to extend the privilege to any post-employment communications between a corporation's attorney and its former employees "because former employees categorically differ from current employees with respect to the concerns identified in *Upjohn*." *Newman v. Highland Sch. Dist. No. 203*, 381 P.3d 1188, 1192 (Wash. 2016). The Court explained by citing to the Restatement (Third) of Agency § 8.11:

> [E]verything changes when employment ends. When the employer-employee relationship terminates, this generally terminates the agency relationship. As a result, the former employee can no longer bind the corporation and no longer owes duties of loyalty, obedience, and confidentiality to the corporation. See *id.* & cmt. d. Without an ongoing obligation between the former employee and employer that gives rise to a principal-agent relationship, a former employee is no different from other third-party fact witnesses to a lawsuit, who may be freely interviewed by either party.

381 P.3d at 1192–93. The Washington court was emphatic that the purpose of the corporate attorney-client privilege is to "foster full and frank communications between counsel and the client (*i.e.*, the corporation), not its former employees." *Id.* at 1193.

By contrast, other courts have accepted the statement in the *Upjohn* concurrence and extended the corporate attorney-client privilege to include former employees. The Colorado Court of Appeals, for example, has held that the privilege applies to "communications between counsel and former employees of the client which concern activities during the period of their employment." *Denver Post Corp. v. Univ. of Colo.*,

4

739 P.2d 874, 880 (Colo. App. 1987). And Chief Judge Philip A. Brimmer of this Court, while noting the lack of Tenth Circuit authority on the issue, explained:

> [O]ther circuits to address the question have "concluded that the distinction between present and former employees is irrelevant for purposes of the attorney-client privilege." *Sandra T.E.* [*v. South Berwyn School Dist. 100*,] 600 F.3d [612,] 621 n.4 [7th Cir. 2010]; *see also In re Allen*, 106 F.3d 582, 605 (4th Cir. 1997) (noting that "[m]ost lower courts have followed the Chief Justice's reasoning [in Upjohn] and granted the privilege to communications between a client's counsel and the client's former employees").

*Collardey v. All. For Sustainable Energy, LLC*, 406 F. Supp. 3d 977, 981 n.3 (D. Colo. 2019).

One case where the facts closely mirror those presented by the instant Parties is *Peralta v. Cedant Corporation*, 190 F.R.D. 38 (D. Conn. 1999). In *Peralta,* an unrepresented former employee was being deposed in connection with an employment dispute. The deponent had prepared for the deposition by consulting with her former employer's lawyer. During the deposition, the plaintiff's counsel tried to ask about the deponent's conversations with the employer's counsel in preparing for the deposition. The employer's counsel objected and instructed the witness not to answer. Similar objections and instructions were given when the plaintiff's counsel tried to ask about conversations between the opponent and the employer's counsel during a break in the deposition.

The *Peralta* court found that "wholesale application of the *Upjohn* principles to former employees as if they were no different than current employees is not justified by the underlying reasoning of *Upjohn*." 190 F.R.D. at 40. Because the deponent was no longer employed, she was not required to speak "at the direction of management." *Id.*

The former employee no longer had any duty to her employer to provide the information sought in the deposition. *Id.* at 41.

The *Peralta* Court ultimately came to several conclusions:

1. Any privileged information obtained by the former employee/deponent while an employee, including any information conveyed by counsel during that period, remains privileged upon the termination of her employment. *Id.*

2. If the nature and purpose of the employer's attorney's communications with the former employee was to learn facts underlying the lawsuit, that the former employee was aware of as a result of her employment, such communications are also privileged, whenever they occurred. *Id.* Thus, pre-deposition communications by the corporate attorney with the former employee, limited to the "underlying facts in th[e] case" remain privileged. *Id.*

3. However, with respect to communications which occurred after employment ended, related to her deposition preparation and testimony, such communications are not privileged. "If, for example, [the lawyer] informed [the deponent] of facts developed during the litigation, such as testimony of other witnesses, of which [the deponent] would not have had prior or independent personal knowledge, such communications would not be privileged, particularly given their potential to influence a witness to conform or adjust her testimony to such information, consciously or unconsciously." *Id.*

4. Also, with respect to conversations during a break in a deposition as to how a question should be handled, such conversations are not entitled to any privilege and "opposing counsel has the right to ask about matters that may have affected or changed the witness's testimony." *Id.*

The touchstone from the *Peralta* case which facilitates counsel's determination whether a communication with a former employee is privileged or not is the following:

> "[D]id the communication relate to the former employee's conduct and knowledge, or communication with defendant's counsel, during his or her employment? If so, such communication is protected from disclosure by [the employer's] attorney-client privilege under *Upjohn*. As to any communication between [the employer's] counsel and a former employee whom counsel does not represent, which bear on or otherwise potentially affect the witness's testimony, consciously or unconsciously, no attorney-client privilege applies.

*Id.* at 41–42.

This approach seems reasonable and consistent with the objectives of preserving the corporate entity's privilege, while recognizing that the adversary has a right to know if the witnesses' testimony has been influenced in any way.

For these reasons, I accept Ms. Corcoran's arguments from her brief (Dkt. #32) and adopt the *Peralta* opinion with respect to *issues of attorney-client privilege only*. With respect to attorney-client privilege, the *Peralta* decision should guide any future deposition questions and answers to and from former Rose employees.

The *Peralta* decision goes on and reaches certain conclusions about the work product doctrine and how a lawyer can have a discussion about legal theories and opinions with a former employee and such discussion might be protected as work product. *See Peralta*, 190 F.R.D. at 42 (suggesting that the work product doctrine would prevent deposition questions about legal theories or opinions that the corporate lawyer may have discussed with the former employee). I disagree with the *Peralta* opinion on this point. The authority it cites, C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* § 2024, does not support the position stated. A review of the most recent edition of the Wright and Miller treatise indicates that this section is referring to whether showing a work product document to a third party waives completely the work product privilege. Obviously, the fact that work product might have been shown by a lawyer to a third party does not mean that it can then be obtained directly from the lawyer. Thus, the showing of the document to a third party does not waive the work product protection. *See* C. Wright. A. Miller and R. Marcus, *Federal Practice and Procedure* § 2024 at 531–32 (2010).

But a third party has no duty maintain such post-employment communications of trial strategy as confidential. If a lawyer is dumb enough to tell her trial strategy to a former employee of the client, and the former employee has no ongoing duty of confidentiality with respect to information learned post-employment, then opposing counsel is free to inquire about it and the former employee can answer questions in deposition without infringing on the attorney work product doctrine. Thus, the Court does not adopt *Peralta*'s discussion of the work product doctrine.

### Ex Parte Communications with Former or Current Employees

On this issue, I agree with Ms. Corcoran's position that contact with former or current employees is governed by Colorado Ethics Opinion 69. Opinion 69 requires prior consent of the organization's counsel before contacting "a constituent of the organization who supervises, directs, or regularly consults with the organization's lawyer concerning the matter, or has authority to obligate the organization with respect to the matter, or whose act or omission in connection with the matter may be imputed to the organization."

Opinion 69 explicitly does not address the scope of the attorney-client privilege. So, when an attorney for a plaintiff seeks to contact and interview current employees of a defendant, the attorney must be scrupulous in their questioning to not infringe on the attorney-client privilege of the organization.

That said, the Court will not prohibit the Ms. Corcoran's lawyers from trying to contact or interview (without Rose's consent) former or current employees of Rose who do not fall within the definition described in Opinion 69. Obviously, Ms. Corcoran's

8

counsel "must not use methods that violate the legal rights of the organization, including methods that might invade the attorney-client privilege of the organization."

I do not agree that the fact that Rose's counsel has communicated with current non-management employees about this litigation necessarily converts these witnesses into the kind of constituents who may not be contacted ex parte. Because Rose has not claimed that any of the nurse managers that Plaintiff's counsel seeks to interview "supervises, directs or regularly consults with the organization's lawyer concerning the matter," Plaintiff's counsel is entitled to interview them privately.

SO ORDERED THIS 20th day of May, 2022.

_____
THE HON. N. REID NEUREITER
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO